IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| ALBERT LEE GONZALES, § | |
| § | |
| Petitioner, § | |
| § | |
| v. § | 2:18-CV-215-Z-BR |
| § | |
| DIRECTOR, § | |
| Texas Department of Criminal Justice, § | |
| Correctional Institutions Division, § | |
| § | |
| Respondent. § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
TO DISMISS PETITION FOR A WRIT OF HABEAS CORPUS**

Before the Court is the *Petition for a Writ of Habeas Corpus by a Person in State Custody* filed by Petitioner, Albert Lee Gonzales ("Gonzales"). For the following reasons, Gonzales's habeas application should be DISMISSED.

**I. PROCEDURAL HISTORY**

On May 22, 1990, Gonzales was indicted under Case No. 6986-C in the 47th District Court of Randall County, Texas, for capital murder for intentionally causing the death of Hilton Raymond Merriman, Sr., while in the course of attempting to commit and committing the burglary of the decedent's habitation. (ECF[1] 16-1 at 71[2]). After a severance was granted, Gonzales and two other defendants, Douglas Nathan Palmer ("Palmer"), and Johnny Lee Rey ("Rey") were tried sequentially. (ECF 16-1 at 229–30). Gonzales was found guilty by a jury and sentenced to life imprisonment. (ECF 16-2 at 489–93). He did not appeal. (ECF 4 at 6).

---

[1] The "ECF __" reference is to the number of the document on the Court's docket in this civil action.
[2] The page reference is to the page identification number ("PageID") assigned by the Court's electronic filing system.

In December 1998, Gonzales wrote to the district judge and others seeking a recommendation for the commutation of his sentence. (ECF 16-2 at 502–06). He admitted in that correspondence that he had acted with several others in causing Merriman's death. (*Id.* at 503, 506).

On June 14, 2013, Gonzales filed his first state application for writ of habeas corpus. (ECF 16-6 at 821–34). The application was denied without written order. (*Id.* at 817).

On September 23, 2013, the Clerk of this Court received for filing in the Lubbock Division a petition for writ of habeas corpus by Gonzales. (No. 5:13-CV-210-C). The petition was transferred to the Amarillo Division. (No. 2:13-CV-185-J-BB). The petition was denied as time barred. (*Id.* ECF 7, 8).

By letter dated December 6, 2017, the United States Department of Justice ("DOJ") notified the Randall County Criminal District Attorney that the DOJ had determined that certain laboratory reports provided by FBI lab examiners in cases involving microscopic hair comparison analyses contained erroneous statements that might have been presented at various trials. Gonzales's was one of those trials. (ECF 4 at 28–30). By letter dated December 14, 2017, the Randall County Criminal District Attorney forwarded a copy of the DOJ letter to Gonzales. (*Id.* at 27). Thereafter, on February 23, 2018, Gonzales filed a second state application for writ of habeas corpus. (ECF 16-9 at 956–73). The second application was also denied without written order.[3] (ECF 16-12 at 1211).

Gonzales sought and was granted permission by the United States Court of Appeals for the Fifth Circuit to file a second or successive § 2254 application. (ECF 3). The grant of leave is

---

[3] The Court notes that to pursue his second state court application, Gonzales only had to show by a preponderance of the evidence that he would not have been convicted but for the testimony in question. *Ex parte Robbins*, 478 S.W.3d 678, 692 (Tex. Crim. App. 2014). Obviously, he did not meet the test.

limited in that the Court is instructed to dismiss the application without reaching the merits should the Court determine that Gonzales has failed to satisfy the requirements for filing the application. (*Id.*) (citing 28 U.S.C. § 2254(b)(4); *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005); *Reyes-Requena v. United States*, 243 F.3d 893, 899 (5th Cir. 2001))).

## II. FACTUAL HISTORY

Gonzales's case was tried in 1994. (ECF 16-2 at 489). Because he did not appeal, the trial was never transcribed. (ECF 17 at 1216 n.3). Respondent had the testimony of three witnesses transcribed to address the Fifth Circuit's tentative grant of leave for authorization to file a second or successive application. (*Id.*; ECF 16-5). The exhibits from the trial were transferred to be used in the trial of another defendant, Sean Allen Smith. (ECF 17 at 1216 n.3; ECF 16-4 at 601–36). All evidence and exhibits were disposed of in due course in 2011 or 2012 pursuant to Article 2.21(6) of the Texas Code of Criminal Procedure. (ECF 17 at 1216 n.3).

## III. PETITIONER'S ALLEGATIONS

Gonzales says that his right to due process was violated and he was denied a fundamentally fair trial by an impartial jury because his conviction was based on testimony that has now been determined to be false. (ECF 4 at 7–8).

## IV. STANDARD OF REVIEW

As stated, the Fifth Circuit's authorization for Gonzales to file a successive application under § 2254 is tentative, in that the Court must dismiss the application without reaching the merits if it determines that Gonzales has failed to satisfy the requirements for filing the application. (ECF 3). The requirements are:

> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

      (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

      (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(b)(2).

## V. ANALYSIS

Respondent does not contest that the factual predicate for the claim could not have been discovered previously through the exercise of diligence. Rather, Respondent argues that the facts pleaded by Gonzales do not describe the denial of a fair trial. (ECF 17). The Court agrees that Gonzales has not shown by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found him guilty of the underlying offense.

To establish his right to relief, Gonzales must establish actual prejudice; that is, he must show that admission of the erroneous evidence had a substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993). In other words, the Court conducts a harmless error analysis. *Id.* at 638 (citing *Kotteakos v. United States*, 328 U.S. 750 (1946)); *Billiot v. Puckett*, 135 F.3d 311, 318 (5th Cir. 1998).

Gonzales contends that he was denied a fair trial because the DOJ "determined that the testimony relied on by the State at trial exceeded the limits of science and was erroneous." (ECF 4 at 7, ¶ (8)). However, the materials upon which he relies do not establish his proposition that "false material testimony" was used at trial. (*Id.*). Understandably, Gonzales wants the Court to believe that his trial was fundamentally unfair, but the record does not support that contention.

The December 14, 2017, letter from the Randall County Criminal District Attorney parrots the language of the DOJ letter stating that "the DOJ concluded, after an investigation into this case

and many others, that 'a report or testimony regarding microscopic hair comparison analysis containing erroneous statements was used in this case.'" (ECF 4 at 27). The DOJ letter also says that "a report or testimony regarding microscopic hair comparison analysis containing erroneous statements was used in this case." (*Id.* at 28). The DOJ letter is clearly a form letter developed for use in cases involving FBI laboratory reports and testimony by examiners in cases involving microscopic hair comparison analysis. (*Id.*). The DOJ letter identifies three potential errors in such cases. (*Id.* at 29). The result of the review enclosed with the DOJ letter reflects that the lab report in Gonzales's case included "error type 2" meaning that:

> The examiner assigned to the positive association a statistical weight or probability or provided a likelihood that the questioned hair originated from a particular source, or an opinion as to the likelihood or rareness of the positive association that could lead the jury to believe that valid statistical weight can be assigned to a microscopic hair association. This type of testimony exceeds the limits of the science.

(*Id.* at 31). The following page of the report, entitled "Response Sheet," reflects that the Innocence Project and National Association of Defense Counsel concur with the conclusion reached that the materials reviewed contain "Error 2—in lab report." (*Id.* at 32). The last page of the report, the "FBI Microscopic Hair Comparison Analysis Review Evaluation Form," reflects that the lab report contains "Error 2," referring to the statement in the report "consistent with having originated from DOUGLAS PALMER." (*Id.* at 34). Finally, attached to the DOJ letter is the lab report containing the statement that a head hair provided for examination was "consistent with having originated from DOUGLAS PALMER." (*Id.* at 37).

The record reflects that the lab report containing the statement in question was not introduced into evidence as an exhibit at Gonzales's trial. (ECF 16-4 at 610–36). The exhibits consisted primarily of photographs, especially of the crime scene, and clothing and shoes taken from defendants including Gonzales. (*Id.*). Joseph Errera, a special agent with the Federal Bureau

of Investigation in the DNA Analysis Unit of the FBI Laboratory, testified at trial. (ECF 16-5 at 743–69). He did testify that hair samples were submitted and tested and that none of Gonzales's hair was found at Merriman's house. (*Id.* at 767). Only one hair, consistent with having originated from Palmer, was identified, although Errera made clear that "hair comparisons do not constitute a basis for absolute personal identification." (*Id.* at 768). Approximately two pages out of the thirty-six pages of Errera's testimony concerned hair. The bulk of his testimony concerned blood samples. Specifically, he testified that blood consistent with Merriman's was found inside Gonzales's sandals. (*Id.* 755–56). Further, three of four DNA tests on items taken from the defendants matched that of Merriman. (*Id.* at 759). Thus, Gonzales's contention that he would not have been convicted without the expert testimony concerning hair sample analysis, (ECF 23 at 1361), and that "no other evidence . . . stood out to the jury more than hair sample analysis testimony by the expert witness," (*id.* at 1368), is belied by the record. There is simply no reason to believe that the testimony regarding hair comparisons had any impact whatsoever on the jurors. Gonzales has not shown by clear and convincing evidence that but for the testimony he would not have been convicted. Pursuant to the Fifth's Circuit's instructions in authorizing the successive application, the undersigned finds that Gonzales has failed to satisfy the requirements for filing the application. (*See* ECF 3).

## VI. **RECOMMENDATION**

For the reasons discussed herein, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the petition for writ of habeas corpus filed by Petitioner, Albert Lee Gonzales, be DISMISSED.

## VII. INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusion and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED June 30, 2021.

*(signature)*
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).